[S. F. No. 7143.   Department Two.—March 26, 1917.]

## W. S. FARLEY, Appellant, v. C. F. REINDOLLAR et al., Respondents.

STREET ASSESSMENT — HEARING PROTESTS — ADJOURNED MEETING OF CITY COUNCIL—JURISDICTION.—Under section 6 of the Street Improvement Act of 1911 (Stats. 1911, p. 730) the city council does not lose jurisdiction to hear and determine a protest against the doing of street work by its failure to pass on and to decide the protest at its next regular meeting after the expiration of the time within which protests might be made, if the protest was taken up at such meeting, and further hearing thereon duly adjourned to a later and reasonable date.

ID.—IRREGULARITIES IN HEARING PROTESTS—NONPROTESTING PROPERTY OWNER.—A property owner, who failed at any time to file a protest against the doing of proposed street work, cannot urge, in opposition to the enforcement of an assessment against his property, a lack of jurisdiction in the city council to proceed with the work, due to its failure to observe the strict requirements of the law in the matter of the hearing and determination of the protests of those who actually did protest.

APPEAL from a judgment of the Superior Court of Alameda County.   T. W. Harris, Judge.

The facts are stated in the opinion of the court.

Phil J. Strubel, and W. T. Kearney, for Appellant.

Walton C. Webb, and Ben F. Woolner, for Respondents.

HENSHAW, J.—Plaintiff having performed certain street work upon a street of the city of Oakland under the Improvement Act of 1911 (Stats. 1911, p. 730), brought his suit to foreclose an assessment lien on the property of defendant Reindollar.   A general demurrer to his complaint was sustained and from the judgment which followed plaintiff has appealed.

It is conceded that in all respects saving one the complaint is sufficient.   The particular in which it was found to be insufficient is the following: The complaint alleged that a protest against the doing of the proposed work was made by certain owners of property; that defendant was not one of the

protestants and, "That the said city council proceeded to hear and pass upon said protest at the next regular meeting of said city council, after the filing of said protest, to wit, on the eleventh day of July, A. D. 1911, and thereupon and at said time, by resolution, duly continued and adjourned said hearing to the twenty-fourth day of July, A. D. 1911, at the hour of 11:30 A. M. of said last-named day, and that due notice was given to said protestants of the time and place of hearing said protest. That the hearing of said protest came on regularly before said city council at a regular meeting thereof, at the time and place set for said hearing, and said protestants being personally present, or being duly represented at said hearing, the said council, after due consideration by its resolution number one hundred and eleven (111) N. S., duly and unanimously overruled and denied said protest, and sustained the aforesaid resolution of intention number thirty-eight thousand two hundred and ninety-nine (38,299)."

The law governing the right to protest and the procedure after protest is found in section 6 of the act of 1911, and so far as it pertains to this consideration the language of the section is as follows: "At the next regular meeting of the city council after the expiration of the time within which said protest may be so made, the city council shall proceed to hear and pass upon all protests so made and its decision shall be final and conclusive. . . . The city council may adjourn said hearing from time to time." Respondent's view, which successfully he impressed upon the trial court, is that this language made it imperative upon the city council to pass on the protest and to decide the protest at its next regular meeting, or, failing to do this, its jurisdiction to proceed further was lost. Even if this statute did not authorize, as in terms it does, an adjournment of the hearing from time to time, no court would hold that such a tribunal lost jurisdiction to proceed with a matter which it had regularly taken up for hearing because it continued that hearing to some other not unreasonable nor forbidden date. It would require some positive declaration of law to abridge the general right which belongs to all legislative, ministerial, and judicial officers to continue the hearing and consideration of a matter over which they have acquired jurisdiction within reasonable limits and

bounds of time. Thus, to instance but one of many similar conditions which will readily occur, if the law declared that all protests must be heard and disposed of within one month after the filing of the protest or all power and jurisdiction to proceed further should be at an end, here would be a peremptory and mandatory time limit fixed within which the council must act or lose the power to act. But all this is superfluous in view of the fact that the law itself makes express provision for continuances and adjournments of the hearings—just such continuance and adjourned hearing as the pleading declares was regularly ordered and at which adjourned hearing, as the pleading further declares, every protestant was present and was heard. But two cases from our state are cited by respondent in support of his most untenable position. Unhesitatingly we declare that if either in fact supported that position it would call for immediate repudiation in the light of the plain language of the law. But neither does so. The first of these is *Stoner* v. *City Council of Los Angeles,* 8 Cal. App. 607, [97 Pac. 692]. There a protest was filed under a law which declared that the protest should be laid before the council at its next regular meeting and that "the council shall hear all such objections at said meeting, or at any other time to which the hearing thereof may be adjourned." The protest was not laid before the council either at its next nor at any of several succeeding regular meetings. The council thus never acquired jurisdiction, and so never, after having acquired jurisdiction, did it continue the hearing. After a considerable lapse of time the council took up the matter of the protest, and the court of appeal very properly held that there had been a failure on the part of the council to acquire jurisdiction of the proceeding by virtue of its neglect to take up the matter of the protest for hearing at its next regular meeting. Here the matter of the protest was taken up at the next regular meeting of the council and the hearing was duly adjourned to a later and not unreasonable date. The second case is *Southern Construction Co.* v. *Howells,* 21 Cal. App. 330, [131 Pac. 756]. In that case the law provided for an appeal to the council by disaffected property owners, and declared that after the filing of such an appeal "notice of the time and place of the hearing shall be published for five days." The required publication was not made, and again the court of appeal, with strict

legality, held that the publication was made jurisdictional to
the right of the council to pass on the appeal. Enough has
been said to show the inappositeness of both of these cases,
and for the reasons given the judgment appealed from is
reversed.

Melvin, J., and Lorigan, J., concurred.

Hearing in Bank denied.

In denying a hearing in Bank, the court filed the following
opinion on April 25, 1917:

THE COURT.—Upon petition for rehearing respondent
urges that this court failed to apprehend and so to discuss
and to decide the principal proposition upon which he relies,
and there is merit in respondent's contention. Respondent's
position as it now appears is that protests were filed before
the eleventh day of July, 1911, but that the time for filing
protests did not expire until July 13, 1911; nevertheless that
on the eleventh day of July, before the expiration of the time
within which protests might be filed, the city council took up
the matter of the protests already filed and continued and
adjourned the hearing of the protests until the twenty-fourth
day of July, 1911; still further that the street law provides
(Stats. 1911, pp. 734, 735) that "at the next regular meet-
ing of the city council after the expiration of the time within
which said protest may be so made, the city council shall
proceed to hear and pass upon all protests so made"; that
the city council having continued the hearing of the protests
until July 24th did not, as the law required, proceed to hear
and pass upon the protests "at the next regular meeting of
the city council after the expiration of the time" because such
next regular meeting was upon July 14th, the day after the
expiration of the time for filing protests. Such being the
facts, respondent's contention is that the council never ac-
quired jurisdiction to proceed further with the matter, be-
cause in cases where protests have been filed (so respondent
argues) only after the regular disposition of those protests
in accordance with the law is the council deemed to have
acquired jurisdiction to order the proposed improvements
(Street Law, Stats. 1911, p. 730, pt. 1, sec. 7).

It is to be noted that no question is here presented of the regularity of the notice to property owners, giving them an opportunity to protest; still further that this defendant was not himself a protestant. His proposition, then, is that because of this asserted irregularity in the matter of the hearing of the protests of those who actually did protest, the council failed to acquire jurisdiction to proceed with the work, and that this failure so to acquire jurisdiction can be urged by a nonprotesting property owner. But such is not our law, nor does respondent cite any authority in support of the law. In *Stoner* v. *City Council of Los Angeles,* 8 Cal. App. 607, [97 Pac. 692], the property owners who urged the objection that the city council had failed to acquire jurisdiction were the very ones whose protests had not met with hearing in accordance with the law. In *Southern Construction Co.* v. *Howells,* 21 Cal. App. 330, [131 Pac. 756], the objection to the failure to give notice was heard in an action of a property owner who had appealed to the city council objecting to the assessment. Preliminarily it may be said that the law looks with steadily decreasing favor on property owners who sit by without urging any objections which they may have to the proceedings about to be taken, for the hearing of which objections the law affords ample opportunity, and then, after their property has been improved, endeavor to deprive the contractor of his just remuneration by ultra technicalities. (*Harney* v. *Benson,* 113 Cal. 314, [45 Pac. 687] ; *O'Dea* v. *Mitchell,* 144 Cal. 374, [77 Pac. 1020] ; *Haughawout* v. *Raymond,* 148 Cal. 311, [83 Pac. 53] ; *McCaleb* v. *Dreyfus,* 156 Cal. 204, [103 Pac. 924].)

Therefore to this objection it must be made answer that whatever force might attach to it were it an objection made by a protestant who had, for failure of the council to observe the requirements of the law, been deprived of a legal hearing of his protest, from the lips of this respondent, who never made a protest at all, it is entitled to no weight. The jurisdiction spoken of in section 7 of the Street Improvement Act means no more, as used in that section, than that if the council has not duly disposed of the protests then so far as protestants are concerned it shall have no power to proceed further. If it has duly disposed of the protests then as to all the world it has the power to proceed. But where, as here, all of the protestants have been heard, and no one of them

is complaining, and the sole complainant is one who has sat by in silence, it is too well settled to require more than a citation of authority, that such a property owner cannot object to the disposition of protests to which he was not a party (*Harney* v. *Heller,* 47 Cal. 15; *Lent* v. *Tillson,* 72 Cal. 404, [14 Pac. 71]; *Duncan* v. *Ramish,* 142 Cal. 686, [76 Pac. 661]; *Chase* v. *Trout,* 146 Cal. 350, [80 Pac. 81]).

Wherefore the petition for a rehearing is denied.