Filed 12/19/22  Southwest Fuel Management, Inc. v. Ampak-I Enterprises, Inc. CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX


| | |
|---|---|
| SOUTHWEST FUEL MANAGEMENT, INC., <br><br> Plaintiff and Respondent, <br><br> v. <br><br> AMPAK-I ENTERPRISES, INC., <br><br> Defendant and Appellant. | 2d Civ. No. B314590 <br> (Super. Ct. No. 56-2020-00545208-CU-UD-VTA) <br> (Ventura County) |


Ampak-I Enterprises, Inc. (Ampak), the tenant, appeals a judgment for unlawful detainer rendered in favor of plaintiff Southwest Fuel Management, Inc. (Southwest), the landlord, involving a commercial lease.  We affirm.

FACTS

Ampak, the tenant, entered into a 10-year commercial lease with Limoneira Mercantile, LLC (Limoneira) in 2009.  Kaleem Syed is the owner of Ampak.  Ampak operates a Del Taco restaurant on the leased premises.

The lease provided that Ampak had the option to extend the lease for 60 months after the expiration of the lease by providing "written notice of such election" at "least 3 but not more than 6 months prior to the date that the option period would commence, time being of the essence." The period to exercise the option to extend the lease was between April 6 and July 6, 2019.

On May 19, 2019, Syed e-mailed the representatives of the lessor stating, among other things, "I will need some time to meet with you and go through with the Options and the New Construction. Please let me know when we can meet."

On July 20, Syed e-mailed a notice to renew the lease. Limoneira did not consider this notice to be timely because the option period had expired. The lease subsequently ended.

In August 2019, Limoneira sold the property and assigned the lease to Southwest.

On May 5, 2020, Southwest sent a letter to Ampak stating: 1) Southwest is now the owner; 2) Ampak had not taken action to timely renew the lease; 3) consequently, Ampak was now on a month-to-month tenancy; and 4) Southwest is now giving Ampak a 30-day notice to terminate the tenancy.

On September 8, 2020, Southwest filed an unlawful detainer action against Ampak seeking to evict it from the premises. At trial the court rejected Ampak's defense that Southwest waived its right to bring an eviction action because it had received Ampak's rent checks. Syed testified that he had timely renewed the lease, but the trial court did not credit this testimony. The court found his July 20, 2019, e-mail was a notice to renew the lease. But this notice did not fall within the period to exercise the option and the notice was therefore untimely. It

2.

found Southwest had properly served a 30-day notice to terminate the tenancy.

The trial court entered judgment for Southwest.

DISCUSSION

*Waiver of the Right to Proceed with the Unlawful Detainer*

Ampak claims its payment of rent after it received the 30-day notice barred Southwest from proceeding. It argues that "by accepting rent from Ampak after serving a notice of termination, Southwest created a new tenancy." (Boldface omitted.)

*Civil Code Section 1945*[1]

Ampak relies on section 1945. It provides, "If a lessee of real property remains in possession thereof after the expiration of the hiring, and the lessor *accepts rent* from him, the parties are presumed to have renewed the hiring on the same terms and for the same time not exceeding one month when the rent is payable monthly, nor in any case one year." (Italics added.)

Southwest contends section 1945 does not apply because it relates to residential tenancies, and this is a commercial tenancy. Section 1945 is in Chapter 2 of the Civil Code, beginning with section 1940. This chapter relates to residential property leases. (*MES Investments, LLC v. Dadson Washer Service, Inc.* (2020) 56 Cal.App.5th 451, 458.) Section 1940 applies to "dwelling units." (*Id.*, subd. (a).) A dwelling unit is defined as a "home, residence, or sleeping place." (*Id.*, subd. (c).) Ampak operates a commercial business that sells food.

One court has suggested that section 1945 does not apply to commercial leases. (*MES Investments, LLC v. Dadson Washer Service, supra*, 56 Cal.App.5th at p. 458.) Another court has concluded that it is "unambiguous that the various protections

---

[1] All statutory references are to the Civil Code.

set forth in chapter 2 are not limited to leases of dwelling units but rather apply to all leases."  (*Rich v. Schwab* (1998) 63 Cal.App.4th 803, 812-813.)

But we need not resolve this dispute because, even if section 1945 applies to commercial leases, the result does not change.  To prove the statutory defense of waiver the tenant must prove the landlord "accept[ed]" the rent.  (*Ibid.*)  Here the trial court rejected Ampak's claim that Southwest waived its right to evict by "accepting" rent.  It found Southwest did not cash any of Ampak's rent checks.  Southwest's May 5th letter advised Ampak that it "must vacate the property."  Where a landlord makes such a demand and does not cash the tenant's rent checks, the landlord has not accepted the rent within the meaning of the statute.  (*Kaufman v. Goldman* (2011) 195 Cal.App.4th 734, 740-741 (*Kaufman*).)

*Notice of Non-Wavier of the Right to Evict*

Ampak claims Southwest was required to give notice that its receipt of the rent checks did not constitute a waiver of its eviction notice.  But Ampak's position was rejected in *Kaufman*, *supra*, 195 Cal.App.4th at pages 740-741.

Ampak relies on *Sheldon Builders, Inc. v. Trojan Towers* (1967) 255 Cal.App.2d 781.  There the issue was whether a party received full payment for an invoice.  The court held the party receiving a check stating it was payment "in full" should have notified the payor that the amount was insufficient to cover the invoice.  Because it did not give that notice, the trial court could find the check was full payment.

In *Kaufman*, a landlord-tenant case, the appellate court held *Sheldon Builders* is distinguishable because it did not involve a landlord's unequivocal intent to evict as shown by a

notice demanding the tenant vacate the premises by a certain date.  In *Kaufman*, the "plaintiff sent defendant a letter in October 2007 informing her that . . . she *was required to vacate the apartment* by March 1, 2008."  (*Kaufman*, *supra*, 195 Cal.App.4th at p. 741, italics added.)  That constituted the relevant notice to the tenant of an unequivocal intent to evict.  The receipt of a rent check by the landlord without giving an additional non-waiver notice to the tenant did not waive the landlord's right to evict.

Here, as in *Kaufman*, Ampak received an unequivocal notice to vacate the property by a certain date.  Ampak sent rent checks, but Southwest did not cash them.  As in *Kaufman*, Southwest was not required to give an additional notice that its receipt of the checks did not constitute a waiver of its right to evict.  (*Kaufman*, *supra*, 195 Cal.App.4th at pp. 740-741.)

But even apart from the *Kaufman* rule, Ampak has not shown why the trial court could not reasonably find Ampak's claim of waiver of the right to evict was not credible.  Ampak received multiple notices showing Southwest was not waiving its right to evict.  Southwest gave Ampak notice that the lease expired and notice that it was not renewing it.  Southwest served a 30-day notice to vacate.  On June 8, 2020, Southwest sent a letter to Ampak reiterating that Ampak had not renewed the lease.  Ampak responded that it knew Southwest had not cashed its rent checks and there was a dispute about the amount it owed.  On June 23, 2020, Southwest responded stating that "Ampak Must Vacate the Premises *Immediately*" and that Southwest had not made a "*waiver of any kind*."  (Italics added & boldface omitted.)  When Ampak did not vacate, Southwest served Ampak with an unlawful detainer complaint.  On

5.

September 8, 2020, Ampak filed a Covid-19 financial distress declaration. Southwest responded stating Ampak was "retaining possession of the Property *without authorization or consent*." (Italics added.) Southwest filed a declaratory relief action against Ampak in September 2020 reasserting its position that the lease had ended.

*A Lease Non-Waiver Provision*

Moreover, Southwest did not have to give a notice to avoid a waiver for another reason. Ampak agreed there would be no waiver in the lease. (*Woodman Partners v. Sofa U Love* (2001) 94 Cal.App.4th 766, 771; *Karbelnig v. Brothwell* (1966) 244 Cal.App.2d 333, 340.)

The lease provides, "The *acceptance of rent by Lessor shall not be a waiver of any Default or Breach* by Lessee. *Any payment by Lessee may be accepted by Lessor* on account of moneys or damages due Lessor, notwithstanding any qualifying statements or conditions made by Lessee in connection therewith, which such statements and/or conditions shall be of no force or effect whatsoever unless specifically agreed to in writing by Lessor at or before the time of deposit of such payment." (Italics added.)

"[W]hile an intent to waive may be inferred from the acceptance of rent under certain circumstances, such an inference may be rebutted *and is rebutted* . . . by the express agreement between the parties." (*Karbelnig v. Brothwell*, *supra*, 244 Cal.App.2d at p. 342.) Where the commercial tenant signs a lease containing a provision that acceptance of the rent shall not be a waiver of the right to evict, the tenant has "actual notice" that the waiver defense is not available. (*Woodman Partners v. Sofa U Love*, *supra*, 94 Cal.App.4th at p. 771.)

6.

Ampak claims this lease provision is limited to nonpayment of rent cases. But the terms of the lease are not so restricted. The words "*any Default or Breach*" are "broadly worded" and inclusive. (*Hot Rods, LLC v. Northrop Grumman Systems Corp.* (2015) 242 Cal.App.4th 1166, 1180.) The failure to renew the lease and failure to vacate fall within the broad language of defaults or breaches. Moreover, from the multiple notices Southwest gave Ampak, the trial court could reasonably infer Ampak had no reasonable belief that Southwest ever waived its right to evict.

The result does not change for another reason. Ampak claimed it paid the rent. But the trial court found the checks Ampak sent did not constitute the amount of rent due because Ampak owed an additional $50,000 in back rent. Where the tenant cannot prove it tendered the rent or where the "exact" amount of rent is disputed or "unknown," the statutory waiver defense does not prevail. (*City v. Hart* (1985) 175 Cal.App.3d 92, 95; § 1945.) This was not a case based on a three-day notice to pay rent or quit where the amount of rent paid is directly in issue. But where a tenant raises the waiver defense, the trial court must determine whether the defense is factually correct. Ampak claims there was other evidence showing it did not owe more rent. But we do not weigh the evidence or resolve evidentiary conflicts; those are matters exclusively decided by the trier of fact. (*El Escorial Owners' Assn. v. DLC Plastering, Inc.* (2007) 154 Cal.App.4th 1337, 1358.) The trial court did not err by rejecting this defense.

*Ampak's Failure to Renew the Lease*

Ampak contends the trial court erred by ruling that it did not give timely notice to exercise its option to renew the lease. We disagree.

The lease provided that Ampak had the option to extend the lease for 60 months after the expiration of the lease by providing "written notice of such election" at "least 3 but not more than 6 months prior to the date that the option period would commence, time being of the essence." The lease commenced on October 6, 2009. The period to exercise the option to extend the lease was between April 6 and July 6, 2019.

Ampak contends an e-mail dated May 19, 2019, was the notice it gave to renew the lease, and it falls within the April 6 to July 6, 2019, time period to renew the lease.

Southwest responds: 1) at trial, Ampak's counsel claimed the July 20th e-mail was the exercise of the option to renew the lease; 2) counsel did not claim that the May 19th e-mail was the exercise of that option; 3) this claim about the May e-mail should have been raised at trial; and 4) Ampak may not raise it for the first time on appeal.

There is merit to Southwest's objection. A party cannot raise issues that should have initially been raised in the trial court for the first time on appeal. (*Doe v. University of Southern California* (2018) 29 Cal.App.5th 1212, 1230.) That is unfair to the trial court and the opposing party. (*Ibid.*) If Ampak's counsel believed that the May e-mail was the option to renew, he should have raised that issue at trial. Consequently, Ampak forfeited this claim on appeal. (*Ibid.*) But even had the issue been raised, the result would not change.

Southwest claims e-mails are not valid notices under this lease. The lease provides all notices "shall be in writing and may be delivered in person (by hand or by courier) or may be sent by regular, certified or registered mail or U.S. Postal Service Express Mail, with postage prepaid, or by facsimile transmission." The notice provisions specified in a commercial lease are binding on the parties. (*Culver Center Partners East #1, L.P. v. Baja Fresh Westlake Village, Inc.* (2010) 185 Cal.App.4th 744, 750.) "[C]ourts are strict in holding an optionee to exact compliance with the terms of the option." (*Hayward Lumber & Investment Co. v. Construction Products Corp.* (1953) 117 Cal.App.2d 221, 229.) An e-mail does not fall within with the authorized methods to give notice specified in this lease. But even had the lease included e-mail notice, the result would not change.

The e-mail provides, "Hello, Alex and Ryan, [¶] It has been a long time since we meet. I hope both of you are doing well and in good health. *I will need some time to meet with you and go through with the Options and the New Construction. Please let me know when we can meet.* [¶] Thank you [¶] Kaleem Syed." (Italics added.)

This e-mail is not a valid notice to exercise the option to extend the lease. "To avail himself of an option of renewal given by a lease, a tenant must apprise the lessor in *unequivocal terms of his unqualified intention to exercise his option* in the precise terms permitted by the lease." (*Hayward Lumber & Investment Co. v. Construction Products Corp., supra,* 117 Cal.App.2d at pp. 227-228, italics added.)

The e-mail does not contain "unequivocal terms of" an "unqualified intention" to renew the lease. It only shows Ampak

9.

wanted a meeting at some unspecified future date – "let me know when we can meet." There was no indication that any decision had been made about renewing the lease. The words "lease" and "renewal" are not contained in this message. A recipient of such an e-mail would reasonably understand that a meeting was requested, but would not know the result of that meeting, or what Ampak would decide, until after that meeting.

Ampak contends Syed's testimony shows this was a notice to renew. He was asked, "[T]his email doesn't exercise the option, does it?" Syed responded, "I did told him – yes, it does says that." But his testimony is not consistent with the terms of the e-mail. Moreover, the trial court did not find him to be credible. We do not decide credibility; that is a matter exclusively decided by the trier of fact. (*In re Sheila B.* (1993) 19 Cal.App.4th 187, 199.) Ampak notes that Syed sent an e-mail on July 20 stating, " 'I will be exercising my option to extend the least for five years.' " Ampak has not shown why the trial court could not reasonably infer that he sent that July 20th e-mail because he knew his May e-mail was not a notice to renew. The court found Ampak knew it "dropped the ball on the exercise of" its option and it sent the untimely July 20th e-mail to try "to correct the problem."

The trial court found the July 2019 e-mail was "outside the express window to exercise the option in the lease," therefore the option period ended and the lease expired. We must draw all reasonable inferences in support of the court's findings. (*Woodman Partners v. Sofa U Love, supra*, 94 Cal.App.4th at p. 771.) Ampak has not shown error.

We have reviewed Ampak's remaining contentions and we conclude it has not shown grounds for reversal.

## DISPOSITION

The judgment is affirmed. Costs on appeal are awarded to respondent.

NOT TO BE PUBLISHED.


GILBERT, P. J.

We concur:


YEGAN, J.


BALTODANO, J.

Julia A. Snyder, Judge

Superior Court County of Ventura

_____

Ferguson Case Orr Paterson and Wendy Cole Lascher for Defendant and Appellant.

Bleau Fox, Martin R. Fox and Elizabeth M. Martin for Plaintiff and Respondent.